GEORGE W. LONG, Appellant, *v.* THE MILLERTON IRON COMPANY, Respondent.

*Court of Appeals, January 26, 1886.*

Affirming same case, 30 Hun, 216, Mem.

*Evidence. Vary written contract.*—A written contract, which is clear and unambiguous, and contains neither patent nor latent ambiguity, embodies the agreement and speaks the language of the parties, and parol evidence is inadmissible to add to or take from the language used, and to give any other meaning to the contract than its language imports.

This was an action to recover damages for the cutting and carrying away of certain timber, and was based on a written contract of which the following is a copy :

" That the party of the first part, for and in consideration of $2.85 for the wood for 100 bushels of coal, hereby agrees to sell to the party of the second part all the hard wood on three certain pieces described as follows : One lot known as the ' Mill Lot,' purchased of Henry and Ephraim Alderman, and containing 155 acres, be the same more or less; one lot purchased of the same, containing 145 acres ; and one lying north of these lots, but adjoining, containing 200 acres, more or less, and purchased of Rufus L. Mason and Charles Taylor. The party of the second part hereby agreeing to cut sufficient wood for at least 100,000 bushels of coal per year, the year commencing April 1, 1870 ; and it is further understood and agreed by and between the parties to this instrument that the measurement of the coal shall be ascertained by the measurement of the cars, or by a coal-measuring box at the kilns. The terms of payment to be as follows, viz.: $500 on the signing of this contract ; $1,000 September 15th, next ; and thereafter the wood to

be paid for once in three months, commencing April 1, 1870. Semi-annual interest on all advances to be paid by the party of the first part, and all advances to be paid back by the party of the first part, in equal amounts, quarterly from the products of the wood on the last 150 acres of land. The party of the first part having the privilege of reserving from the above-described lands logs sufficient for 100,000 feet of hardwood lumber, with the express understanding that these logs are to be marked and taken from the land no faster than the coal wood is chopped, and that they are to be cut in a manner not to interfere with the chopping of the coal wood by the parties of the second part. The party of the first part reserving 1,500 cords hard-wood from the above lands, one-half to be cut on the south end of the tract, and the balance on the north end, or where the soft timber is being cut; this clause intending to stipulate that this reservation of wood shall be at a fair average distance from the depot, and in a fair average locality as to ground and feasibility of getting the wood."

On the 3d of January, 1872, the same parties entered into another contract, of which the following is a copy :

"Whereas, George P. Holcombe, of Lebanon Springs, N. Y., and the Millerton Iron Company, of North East, N. Y., have a contract for wood or charcoal, and now wish to annul said contract, by sale and purchase outright of said wood described in said contract; now, therefore, I, the said George P. Holcombe, hereby agree to sell to the said Millerton Iron Company all the hard-wood on said tract of land as described in said contract, with the privilege of ten years to remove the wood or coal, for the sum of $5,200, payments to be made as follows, viz : mortgages $3,500 to be assumed by the said Millerton Iron Co., as follows: $1,000 to Henry and Ephraim Alderman, April 1, 1872, and $1,000, April 5, 1873, to the same parties, and the sum of $1,500 to Charles Taylor, April 15, 1872, in all $3,500 ; and the balance of $1,700 as follows: $250, Janu-

ary 4, 1872; $500 January 15, 1872; and $950 from March 1 to March 10, 1882; or the said Millerton Iron Company may have the privilege of having the standing timber on said lots estimated, and, upon an understanding and agreement as to the number of cords of hard-wood standing on the tract being reached by the two parties, then the said Holcombe hereby agrees to discount 150 cords of wood for every 1,000 cords of wood on the tract; selling the timber standing, after said deduction is made, to the said Millerton Iron Company, for $1.25 per cord, and giving them the privilege of ten years to remove the wood or coal; in either case the mortgages to be assumed and paid by the Millerton Iron Company, and the balance to be paid the said Holcombe, on the basis of the payments as specified above upon the terms of sale for $5,200. The Millerton Iron Company on their part hereby agree to take the above-described wood on one of the above propositions, which proposition they accept to be made known and declared within thirty days from date, or by February 10, 1872. And it is expressly understood that any money paid the said Holcombe by the said Millerton Iron Company on and after January 4, 1872, on account of said wood shall apply on this purchase as a payment. And, in case the above purchase is completed, then the said Millerton Iron Company, within a period of one year, agree to build one more kiln at Danby, and increase their contract for coal from that point to 120,000 bushels per year, this to be done upon condition that the kilns at Danby are run to advantage."

The defendant elected to accept the first proposition contained in the last contract to wit, to pay the gross sum of $5,200 for all the wood embraced in the contract, and such consideration was accordingly paid by defendant.

On the trial plaintiff offered to prove acts, statements and declarations of the parties at the time, and after the making of the contract, showing that the timber in litiga-

tion was not understood by the parties to be covered by the contract. The offer was excluded on objection.

Appeal from a judgment of the general term of the supreme court, affirming judgment entered on report of the referee, dismissing the complaint.

*James Lansing*, for appellant.

*Esek Cowen*, for respondent.

EARL, J.—The only question for our consideration is whether the evidence offered and excluded by the referee should have been received. We think the second contract, which fixes the rights of the parties, is perfectly clear and unambiguous ; and that, under it, the defendant acquired the right to all the hard wood upon the lands referred to therein. Under the first contract the defendant was to cut sufficient wood for at least 100,000 bushels of coal in each year, and was to pay therefor at the rate of $2.85 for each hundred bushels of coal, and the measurement of the coal was to be ascertained by the measurement of the cars, or by a coal-measuring box at the kilns : and Holcombe reserved the lumber and cord-wood to be taken, under the circumstances and in the manner particularly specified. The new contract was intended to accomplish the purchase outright —that is, in bulk, at once and unconditionally—of all the wood described in the first contract. Now what wood was described in the 'first contract? Clearly all the hard-wood on the three parcels of land mentioned. Under the second contract it was optional with the defendant to take all the hard-wood at the gross sum of $5,200, or at $1.25 per cord, the quality to be estimated and thus ascertained by agreement. Under the first contract it was optional with Holcombe to reserve or not the lumber mentioned. Was the defendant to pay the gross sum, $5,200, for the hard-wood, leaving it still optional with Holcombe to make the reserva-

tion? Was it to pay the gross sum leaving Holcombe the right to reserve hard-wood worth, in the tree, $2,500? Any reservation whatever of hard-wood is clearly in conflict with the plain language of the last contract. That must be held to embody the agreement, as it speaks the language of the parties. There is neither patent nor latent ambiguity in the contract, and parol evidence was inadmissible to add or to take from the language used, and to give any other meaning to the contract than its language imports. There is no word or phrase therein which needs any explanation.

The language of the contract also includes in the sale the sprouts or young trees. They were not excepted, and it is neither impossible nor even highly improbable that they should be included. The defendant was bargaining for all the hard-wood, and paying a gross sum therefor and within the ten years the small trees would become much larger. It is not reasonable to suppose that parties making a contract to settle all doubts and to remove all difficulties would leave a chance for dispute over the size of growing small trees. We think there is no rule of law which would justify the reception of the evidence offered. If by mistake or fraud, the written contract did not express the agreement of the parties, Holcombe should have had it reformed or corrected. As it is, it is a perfect answer to plaintiff's claim.

The judgment should be affirmed, with costs.

RUGER, Ch. J., MILLER and FINCH, JJ., concur; RAPALLO, ANDREWS and DANFORTH, JJ., dissent.